UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> JERRI MARTINEZ-TEJEDA, ) <br> YOELLY CARMENATTY, ) <br> GILBERTO ALICEA, ) <br> SAUL TORRES, ) <br> MICHAEL BATE, ) <br> JOEL ROUGEAU, and ) <br> LILY SOLIS, ) <br> ) <br> Defendants. ) | No. 15-mj-4238 DHH |

**GOVERNMENT'S SUPPLEMENTAL SUBMISSION REGARDING DETENTION**

The United States hereby supplements its argument made in court on July 29, 2015 regarding the need to detain defendant Yoelly Carmenatty. The government also corrects a factual misstatement made in its July 16, 2015 filing.

**A. The Seizure in Oklahoma Was of Fentanyl, Not Heroin**

In the government's motion to amend the grounds for detention, the government stated:

> The government now seeks to detain defendants on the additional ground of danger to the community, pursuant to 18 U.S.C. § 3142(f)(1). In particular, the maximum penalty for the offense charged is life, and the charge carries a maximum term of imprisonment of ten years or more if the defendants are held responsible for more than one kilogram of heroin. See 18 U.S.C. § 3142(f)(1)(B) & (C). This is likely given that over ten kilograms of heroin were seized in connection with the investigation.

Government's Motion to Amend, July 16, 2015 at p. 1. The last sentence was based on the intercepted calls and the observations of the Oklahoma Highway Patrol. At the time of this filing, counsel for the government was not aware of the results of the DEA laboratory testing of

the seized materials.[1] It turns out that the net weight of the drugs seized in Oklahoma was just over *nine* kilograms and the substance was *fentanyl,* not heroin.[2] However, because there is ample evidence in the investigation that defendant Carmenatty, along with her boyfriend Martinez-Tejeda, were dealing in multiple kilograms of heroin, and that at the time of their arrest they were gathering approximately $500,000.00 which was intended for the purchase of at least seven kilograms of heroin, the government still expects that defendant Carmenatty will face a maximum penalty of life in prison.

### B. The Presumption Under 18 U.S.C. § 3142(e)(3)(A) Applies

The presumption that no set of conditions will reasonably assure the appearance of the defendant and the safety of the community applies here because the Court has found that there is probable cause to believe that Carmenatty has committed a drug offense for which the maximum term of imprisonment is ten years or more; *see* 18 U.S.C. § 3142(e)(3)(A). As stated above, this is not altered by the fact that the Oklahoma seizure involved fentanyl rather than heroin because (i) defendant is charged with a conspiracy to distribute heroin with substantial evidence in the affidavit regarding multiple kilograms of heroin, for which the maximum period of incarceration would be life; and (ii) the Court may consider the likelihood that the government will seek

---

[1] The DEA report was completed on July 13, 2015 but not received until July 18, 2015. It appears that a reference to the drugs seized in Oklahoma as containing fentanyl (but not as being *only* fentanyl), was included in an email to undersigned counsel on July 13, 2015. Undersigned counsel was in court on a different matter when the email was sent, and went directly to Worcester from that court to sign up the criminal complaints and attend the initial appearance hearing without having an opportunity to read the email. Moreover, the July 13, 2015 email was principally about whether fingerprints could be lifted from the packaging of the seized drugs. Counsel did not review the DEA report itself until July 18, 2015 when the report itself was received, *after* the July 16, 2015 filing.

[2] Because defendant is charged in the complaint (as modified by the Court) with a conspiracy to distribute heroin, the seizure in Oklahoma is not determinative of the maximum penalty under the complaint. The government is likely to indict on broader charges, however. Moreover, the evidence contained in the criminal complaint affidavit indicates that this defendant was involved in a conspiracy to distribute more than one kilogram of heroin.

charges including trafficking fentanyl and that the proof of defendant's involvement in that portion of the conspiracy is also substantial.[3] Defendant has not, and cannot, meet her burden of establishing by clear and convincing evidence that there is a set of conditions which will ensure her appearance and protect the safety of the community.

    C. **The Risk of Flight Is Very High**

Defendant Carmenatty has one child in the Dominican Republic; if counsel's recollection of the Pretrial Services report is correct, both her parents are there as well. Her passport was issued by the Dominican Republic. In contrast, defendant's ties to the United States are much more tenuous. She is separated or divorced from her husband and her boyfriend (Martinez-Tejeda) is being held in connection with the same charges facing Ms. Carmenatty. He is facing an even longer period of incarceration due to his criminal history. Defendant voluntarily terminated her employment with Arbor Home Care, according to a representative of Arbor, on July 4, 2015 without any advance notice and after working for less than six months. She quit nine days before the search warrant was executed. Clearly, she has no work ties that will keep her in the United States. Intercepted telephone calls during the investigation indicate that the drug trafficking organization has transferred money to the Dominican Republic. Defendant is also expecting a child, and it should be presumed that she will not want to be separated from her baby. While this is understandable, it is a factor that greatly increases the likelihood that she will flee to her home country, especially in light of the potential sentence she is facing. If the government proves that the conspiracy was involved in the distribution of more than one kilogram of heroin, defendant faces a mandatory sentence of not less than ten years. *See* 21 U.S.C. § 841(b)(1)(A). Simply put, she will run. And there is no set of conditions that will keep

---

[3] The maximum period of incarceration for trafficking fentanyl (regardless of weight) is twenty years, *see* 21 U.S.C. § 841(b)(1)(C).

her here once she is released.

### D. Defendant's Pregnancy Can Be Treated Appropriately

Defendant's pregnancy is a medical condition which the prison system is prepared to treat appropriately. Undersigned counsel has consulted the Marshal's Service as well as Wyatt Detention Facility Medical Unit personnel. Both sources indicated that they have dealt with pregnant prisoners before on a number of occasions. Wyatt staff in the Medical Unit indicated that pregnant prisoners are taken to a separate health care facility for any needed services in addition to the medical care available within the facility.

There is no compelling reason, therefore, to release defendant on the ground that she is pregnant. *See, e.g., United States v. Garivay*, 2013 WL6577320 (D. Ariz. 2013)(*unpublished*)(pregnancy not a sufficient ground to overcome presumption in favor of detention).

### E. Defendant Presents a Risk to the Community and to the Ongoing Investigation

Heroin and fentanyl present an enormous risk to the community. Hardly a week goes by without a newspaper article describing a fatal overdose on heroin. Fentanyl is even stronger, by weight, and can cause respiratory depression and death just as heroin can.[4] Defendant Carmenatty was, in her own words, a business partner of Martinez-Tejeda's and we should

---

[4] *See, e.g.,* http://www.medscape.com/viewarticle/841683 (accessed 7/31/2015): "Drug incidents and overdoses related to fentanyl are occurring at an alarming rate throughout the United States and represent a significant threat to public health and safety," DEA administrator Michele M. Leonhart said in a statement. "Often laced in heroin, fentanyl and fentanyl analogues produced in illicit, clandestine labs are up to 100 times more powerful than morphine and 30 to 50 times more powerful than heroin," she added. *See also* http://www.boston.com/news/local/maine/2015/07/31/heartbreaking-obituary-rips-maine-governor-drug-policy/RKpXkbegCog5FbZW054MLJ/story.html?s_campaign=Email:Extra.  The trend is confirmed by the following statistics reported by neighboring Rhode Island: "The state medical examiner's office reported that toxicology screenings have been conducted so far on 46 of the 51 people who died of apparent overdoses this year. Of those 46 tested, 34 people - 74 percent - screened positive for fentanyl."  Providence Journal, March 17, 2015.

expect that if she is released she will take over the running of the drug trafficking organization while he is in custody. Any additional sales of heroin or fentanyl pose an unacceptable risk to the community.

There is also a very real chance that Carmenatty will hide, dissipate or otherwise conceal assets of the drug trafficking organization. She knows which bank accounts hold funds and where money has been hidden. She may also take further steps to intimidate witnesses or any co-defendant that might want to cooperate with the government's investigation. We have seen from the intercepted telephone calls that she was willing to subject co-defendant Lily Solis to kidnap and torture when she thought Solis and Joel Rougeau had stolen the fentanyl shipment.[5] Carmenatty presents a danger to the community at large and to persons involved in the investigation, therefore.

## CONCLUSION

For all of the foregoing reasons, the government urges the Court to detain defendant Yoelly Carmenatty. If released, she is likely to flee and she poses a risk to the community and to the preservation of evidence in this case.

>Respectfully submitted,
>
>CARMEN M. ORTIZ
>United States Attorney
>
>By:   */s/ Thomas E. Kanwit*
>      THOMAS E. KANWIT
>      Assistant U.S. Attorney

Dated: July 31, 2015

---

[5] The government is prepared to submit the transcripts of the relevant intercepted telephone calls that involve Carmenatty once it has resubmitted the motion for a protective order and the order is signed.

      Counsel certifies that this document was filed via the CM/ECF filing system in the District of Massachusetts on this date and that defense counsel will be served via that system. Counsel further certifies that he has consulted with counsel for defendant in an attempt to resolve the issue(s) presented herein.

                                  */s/ Thomas E. Kanwit*
                                  THOMAS E. KANWIT